IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BROOKLYNN C. CLARK, | Case No. 3:24-cv-00409-SB |
| Plaintiff, | **FINDINGS AND RECOMMENDATION** |
| v. | |
| GSL PROPERTIES, INC. *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Brooklynn Clark ("Clark"), a self-represented litigant, filed this action against Defendants GSL Properties, Inc. ("GSL"), CBRE GWS Real Estate Services, Inc. ("CBRE"), One & Three Centerpointe Drive ("One & Three"), Monica Ulrig ("Ulrig"), Bryce Siebenthall ("Siebenthall"), Kimberly Carpenter ("Carpenter"), Anthony Doe, John Doe, and Jon and Jane Does 1 to 20 (together, "Defendants").

On April 22, 2024, the Court granted Clark's application for leave to proceed *in forma pauperis* and ordered Clark to show cause in writing why the Court should not dismiss her complaint for failure to state a claim or, alternatively, to file an amended complaint. (*See* Order, ECF No. 7.) Clark filed an amended complaint, alleging violations of the Fair Housing Act

PAGE 1 – FINDINGS AND RECOMMENDATION

("FHA"), Title VII of the Civil Rights Act of 1968 ("Title VII"), and the Americans with Disabilities Act ("ADA"). (*See* First Am. Compl. ("FAC") at 1, ECF No. 12.) For the reasons explained below, the Court recommends that the district judge dismiss Clark's amended complaint for failure to state a claim.

## DISCUSSION

### I.     LEGAL STANDARDS

#### A.     Screening Requirement

A district court must perform a preliminary screening of an *in forma pauperis* complaint and dismiss any claims that fail to state a claim upon which relief may be granted, are frivolous or malicious, or seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (explaining that § 1915(e)(2)(B) applies to non-prisoners); *Preciado v. Salas*, No. 13-cv-0390, 2014 WL 127710, at *1 (E.D. Cal. Jan. 14, 2014) (stating that courts are "required to screen complaints brought by plaintiffs proceeding *pro se* and *in forma pauperis*") (citation omitted).

#### B.     Pleading Requirements

The Federal Rules of Civil Procedure require a plaintiff to state "a short and plain statement" in a complaint showing that she is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). To state a claim for relief, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

PAGE 2 – FINDINGS AND RECOMMENDATION

### C. Self-Represented Litigants

"Pro se pleadings are held to a less stringent standard than those drafted by lawyers." *Graves v. Nw. Priority Credit Union*, No. 3:20-cv-00770-JR, 2020 WL 8085140, at *2 (D. Or. Dec. 12, 2020) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "In cases involving a [self-represented] plaintiff, the court construes the pleadings liberally and affords the plaintiff the benefit of any doubt." *Kali v. Bulk Handling Sys.*, No. 6:18-cv-02010-AA, 2019 WL 1810966, at *4 (D. Or. Apr. 23, 2019) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

"The court, in many circumstances, instructs the [self-represented] litigant regarding deficiencies in the complaint and grants leave to amend." *Graves*, 2020 WL 8085140, at *2 (citing *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987)). "Nevertheless, a [self-represented] plaintiff's claims may be dismissed without leave to amend where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle [the plaintiff] to relief." *Id.* (citing *Barrett v. Belleque*, 544 F.3d 1060, 1061-62 (9th Cir. 2008)).

## II. CLARK'S COMPLAINT

Clark is a Black, transgender woman "with a disability," specifically anxiety.[1] (FAC at 4, 7.) Clark alleges that GSL manages the apartment complex where she lived. (*Id.* at 2, 4.) CBRE owns and One & Three manages the property where GSL's corporate office is located. (*Id.* at 2-3.) Ulrig is a Portfolio Manager, Siebenthall is an Assistant Portfolio Manager, and Carpenter is a Property Manager for GSL. (*Id.* at 3.) Clark alleges that Ulrig, Siebenthall, and Carpenter were "decision makers" during Clark's residency at GSL's apartment complex. (*Id.*) Anthony Doe and John Doe are GSL employees. (*Id.*)

---

[1] In her original complaint, Clark alleged that she also suffers from depression and Post Traumatic Stress Disorder. (*See* Compl. at 9, ECF No. 2.)

Clark alleges that she began renting a residential apartment from GSL in April 2022. (*Id.* at 4.) During her tenancy, no one ever made any complaints against her, and she always paid her rent on time. (*Id.* at 6.)

When she moved in, she advised GSL that "she was a person with a disability" and needed two reasonable accommodations. (*Id.* at 4.) Clark requested that GSL not post or stick any information on her door. (*Id.*) GSL acknowledged receipt of the requested accommodations but asked for more information about the request not to post information on her door. (*Id.*) Clark and her doctor provided the requested information. (*Id.*)

When Clark renewed her lease, GSL raised her rent more than it raised her neighbors' rent. (*Id.*) At first, Clark was unaware of the discrepancy, but when she renewed her lease for a second time, she learned from neighbors that she was paying more than they were. (*Id.* at 4-5.) At each lease renewal, GSL raised her rent by thirty percent. (*Id.* at 5.) The disparate increase did not align with other factors such as apartment size or location. (*Id.*) For example, Clark's neighbor paid less for a three-bedroom apartment than Clark paid for her two-bedroom apartment. (*Id.*)

In October 2023, Clark's vehicle was mistakenly towed. (*Id.*) Ulrig and GSL promised Clark a refund for her towing-related costs, but never provided it. (*Id.*) Instead, Ulrig, Anthony Doe, and John Doe "contacted the Lake Oswego Police Department and falsified claims against [Clark] in an attempt to have her arrested[.]" (*Id.*) Additionally, Anthony Doe and John Doe "attempted to assault [Clark] and provided false information to law enforcement." (*Id.* at 3.) Clark also alleges that Carpenter made false statements to the police about her. (*Id.* at 5.) The police concluded that Clark had not broken any laws. (*Id.*) However, GSL requested that Clark be "trespassed" from the location of GSL's corporate office to restrict her from bringing her

PAGE 4 – FINDINGS AND RECOMMENDATION

concerns in-person. (*Id.*) As a result, Clark also could not visit other businesses in the building, such as her car insurance agency. (*Id.*)

On another occasion, Clark "attempted to speak with" Carpenter about a twenty-four-hour notice advising that GSL intended to conduct some minor repairs in her apartment, even though Clark had informed Carpenter that she would not be home at that time and did not want anyone entering her apartment when she was not home. (*Id.* at 6.) Clark alleges that Siebenthal, Carpenter, and GSL were "willing to force entry" into Clark's apartment. (*Id.*) After Clark tried to speak with Carpenter, Carpenter called the police "to try to have [Clark] arrested[.]" (*Id.*)

Separately, Clark requested an accommodation requesting that GSL not place a trash can "in front of the front door entrance" because it triggered Clark's anxiety. (*Id.* at 7.) Siebenthall and Carpenter requested more information from Clark's doctor. (*Id.*) Clark provided the requested information, but Siebenthall, Carpenter, and Ulrig never responded to nor honored her requested accommodation. (*Id.*)

Because the police did not arrest Clark, Carpenter and GSL filed an eviction notice against Clark, alleging that her behavior was "outrageous and in the extreme." (*Id.* at 6.) Due to "the constant harassment" and mistreatment, Clark was "forced to move out of her apartment[.]" (*Id.*)

Clark asserts FHA, Title VII, and ADA claims. (*Id.* at 1.) Clark seeks compensatory damages, punitive damages, "a declaration that Defendants acted in violation of the statutory provisions[,]" injunctive relief "as the Court deems appropriate[,]" "prejudgment and postjudgment interest[,]" and costs. (*Id.* at 8, 10-11.)

///

///

PAGE 5 – FINDINGS AND RECOMMENDATION

### III. ANALYSIS

#### A. Personal Involvement

As this Court advised in its Order to Show Cause, although Clark lists CBRE, One & Three, and Jon and Jane Does 1 to 20, she does not "describe facts sufficient to demonstrate their personal involvement in a specific . . . statutory violation." *Swanson v. Dep't of Just.*, No. 6:22-cv-01304-MK, 2022 WL 19693710, at *3 (D. Or. Dec. 13, 2022), *findings and recommendation adopted*, 2023 WL 3168696 (D. Or. Apr. 28, 2023). Clark explains that CBRE owns the property and One & Three manages the property where GSL's corporate office is located. (FAC at 2-3.) She also alleges that she was eventually banned from that property as a result of false reports. (*Id.* at 5.) However, she does not allege CBRE's or One & Three's involvement in the trespass order. (*See id.*, suggesting that GSL requested a trespass order from the police.) Further, Clark does not explain the roles of Jon and Jane Does 1 to 20. Although "[t]he standard used to evaluate a motion to dismiss is a liberal one, particularly when the action has been filed pro se[,] . . . [v]ague and conclusory allegations of official participation in civil rights violations are not sufficient" to state a claim. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted); *see also Swanson*, 2022 WL 19693710, at *3 (dismissing claims against two defendants where the plaintiff did not describe their personal participation). Accordingly, Clark has failed to state a claim against CBRE, One & Three, and Jon and Jane Does 1 to 20, and the Court recommends that the district judge dismiss Clark's claims against them.

#### B. The Fair Housing Act

The FHA makes it unlawful to do the following:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise

> make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
>    (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.
>
>    . . . .
>
>    (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—
>
>       (A) that buyer or renter,
>
>    . . . .
>
>    (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—
>
>       (A) that person[.]

42 U.S.C. § 3604. Further, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604 . . . of this title." 42 U.S.C. § 3617. "Additionally, HUD regulations state that it is unlawful to use different provisions in leases or contracts of sale, such as those relating to rental charges because of race" or sex. *Harris v. Itzhaki*, 183 F.3d 1043, 1052 (9th Cir. 1999) (citing 24 C.F.R. § 100.65(b)(1)).

The Ninth Circuit applies "Title VII discrimination analysis in examining Fair Housing Act discrimination claims." *Id.* at 1051 (quoting *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997)). "A plaintiff can establish a FHA discrimination claim under a theory of disparate treatment or disparate impact." *Id.* (citing *Gamble*, 104 F.3d at 304-05). A plaintiff must plead that the "(1) plaintiff's rights are protected under the FHA; and (2) as a result of the

PAGE 7 – FINDINGS AND RECOMMENDATION

defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury." *Id.*; *see also Freyd v. Univ. of Or.*, 990 F.3d 1211, 1228 (9th Cir. 2021) (explaining that to state a prima facie Title VII discrimination case a plaintiff must allege that "similarly situated individuals outside h[er] protected class were treated more favorably" (quoting *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004))).

    Clark alleges two FHA claims: one based on sex and the other based on race. (*See* FAC at 7-9.) She alleges that her race, sex, gender, departure from gender-based norms, or Defendants' gender-based stereotyping were motivating factors in Defendants' decisions to over-charge her, "fail to provide equal customer service" or benefits, and evict her.[2] (*Id.* at 7.) Although Clark alleges that her neighbors were treated more favorably than she was with regard to the cost of rent, she does not allege the race, sex, or gender identity of her neighbors. (*See id.* at 5, suggesting that Clark's neighbor is also a woman.) In other words, she has not alleged that similarly situated individuals *outside her protected class* were treated more favorably. *See Hicks v. Skaar*, No. C20-5100 RJB, 2020 WL 6075919, at *3 (W.D. Wash. Oct. 15, 2020) (dismissing the plaintiff's FHA claim where the plaintiff had merely pled "conclusory allegations that Defendants treated non-Black American tenants differently than her"), *aff'd*, 859 F. App'x 797 (9th Cir. 2021); *cf. Washington v. Farmington Ests. Owners Ass'n*, No. 3:21-cv-01032-YY, 2024 WL 2882216, at *4 (D. Or. May 17, 2024) (denying the defendant's motion to dismiss the plaintiff's FHA claim where the plaintiff alleged "selective enforcement," "targeted weekly

---

[2] The Court assumes without deciding that Clark can allege an FHA claim based on her status as a transgender woman. *See Scutt v. Norton*, No. 21-cv-00280 JAO-KJM, 2021 WL 5989107, at *4 n.6 (D. Haw. Dec. 17, 2021) ("Plaintiff alleges discrimination on multiple bases, so the Court need not decide at this time whether the FHA's prohibition on sex discrimination encompasses discrimination against transgender/LGBTQ individuals." (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020))), *aff'd*, No. 21-17130, 2022 WL 2312012 (9th Cir. June 16, 2022).

PAGE 8 – FINDINGS AND RECOMMENDATION

inspections," and "egregious fines and penalties" on the "plaintiff and another African American family, and ignored similar and other violations by non-African American homeowners"), *findings and recommendation adopted*, 2024 WL 2880714 (D. Or. June 7, 2024); *Burleson v. Sec. Props. Residential, LLC*, No. C18-0513RSL, 2019 WL 77435, at *3 (W.D. Wash. Jan. 2, 2019) (denying the defendant's motion to dismiss where the "[p]laintiff has alleged that she is part of two protected classes, that she was charged more for services related to her rental unit because of her race and/or disability, and that other tenants not in the protected classes are charged lower rates"). Further, Clark has not alleged any other facts suggesting that the rent increase, calls to police, other negative treatment, and eventual eviction were *because of* a protected status. *See Scutt*, 2021 WL 5989107, at *3 ("Plaintiff does not present plausible facts suggesting that Defendants had discriminatory intent or that they treated similarly situated individuals outside her protected classes more favorably.") (citations omitted); *Scutt v. Maui Fam. Life Ctr.*, No. 20-cv-00375 JAO-KJM, 2020 WL 5579549, at *2 (D. Haw. Sept. 17, 2020) ("Plaintiff does not allege facts entitling her to relief under the FHA. She offers vague and conclusory allegations that Defendant denied her access to benefits based on race and sexual orientation . . . . However, these insufficient facts fail to show that Defendant denied her application for benefits *because of* her race or sexual orientation, as opposed to other grounds for ineligibility.").

For these reasons, the Court finds that Clark fails to state an FHA claim and recommends that the district judge dismiss her claim.

### C.     Americans with Disabilities Act

Clark does not specify which portion of the ADA she believes Defendants violated. Title I of the ADA prohibits discrimination in employment. *See* 42 U.S.C. § 12112. Clark does not allege any facts related to her employment.

PAGE 9 – FINDINGS AND RECOMMENDATION

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities, of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual"; "a record of such an impairment"; or "being regarded as having such an impairment[.]" Id. § 12102(1). The phrase "major life activities" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2). Here, Clark has not alleged that any of the Defendants are a public entity.

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) (citations omitted); see also 42 U.S.C. § 12182. 42 U.S.C. § 12181(7) includes a detailed list of private entities that are considered public accommodations, including "an inn, hotel, motel, or other place of lodging[.]" "Though the ADA applies to places of public accommodation such as an inn, hotel, motel, or other place of lodging, courts have long held that it does not apply to residential apartment complexes." Heuvel v. Costello, No. 2:23-cv-253-TLN-KJN-PS, 2023 WL 5723087, at *3 (E.D. Cal. Sept. 5, 2023) (citation omitted), findings and recommendation adopted, 2023 WL 6215369 (E.D. Cal. Sept. 25, 2023); see also Sawyer v. Pac. Beach House, LLC, No. 21-cv-05140-DMR, 2022 WL 1136797, at *4 (N.D. Cal. Apr. 18, 2022) ("[A]partments and condominiums do not, generally

PAGE 10 – FINDINGS AND RECOMMENDATION

speaking, constitute public accommodations within the meaning of the ADA." (quoting *Trostenetsky v. Keys Condo. Owners Ass'n*, No. 17-cv-04167-RS, 2018 WL 2234599, at *2 (N.D. Cal. May 16, 2018) and collecting cases)); *Hooper v. U.S. Dep't of Hous. & Urb. Dev.*, No. 6:17-cv-00031-MC, 2017 WL 2380176, at *4 (D. Or. May 31, 2017) ("The ADA does not apply however to residential apartment complexes."), *aff'd sub nom.*, 744 F. App'x 473 (9th Cir. 2018).

Clark has not alleged that any Defendants are a private entity that own, lease, or operate a place of public accommodation. (*See* FAC at 4, alleging that GSL owns and manages a residential apartment complex.) Accordingly, the Court recommends that the district judge dismiss Clark's ADA claim. *See Reyes v. Washburn*, No. 2:21-cv-01175-SB, 2023 WL 9470076, at *11 (D. Or. Oct. 31, 2023) (dismissing the self-represented litigant's Title I, Title II, and Title III ADA claims), *findings and recommendation adopted*, 2024 WL 343481 (D. Or. Jan. 30, 2024).

### D.     Title VII of the Civil Rights Act of 1968

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To state a claim for discrimination under Title VII, Clark must plausibly allege that: (1) she was a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) Defendants treated similarly situated employees outside of Clark's protected class more favorably. *See Knight v. U.S. Dep't. of Veteran Affs.*, No. 3:13-cv-01349-BR, 2013 WL 5965740, at *7 (D. Or. Nov. 8, 2013) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006)); *see also Chris v. Carpenter*, No. 3:21-cv-00924-SB, 2022 WL 1913730, at *5 (D. Or. Apr. 20, 2022) ("Even liberally construed, the Court

PAGE 11 – FINDINGS AND RECOMMENDATION

finds [the plaintiff] has failed to allege facts sufficient to support these necessary elements of her discrimination claim."), *findings and recommendation adopted*, 2022 WL 1910262 (D. Or. June 2, 2022).

Clark includes Title VII in the introduction of her complaint (*see* FAC at 1) but does not include a Title VII claim in her claims for relief. As this Court advised in its Order to Show Cause, Clark does not allege that any of the Defendants were her employer, that she suffered an adverse employment action, or that Defendants treated other employees more favorably. Accordingly, Clark has failed to state a Title VII claim, and the Court recommends that the district judge dismiss her claim.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge DISMISS Clark's amended complaint with leave to amend within thirty days.

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**IT IS SO ORDERED.**

DATED this 26th day of August, 2024.

*Stacie F. Beckerman*
HON. STACIE F. BECKERMAN
United States Magistrate Judge